Docket No. 97454–Agenda 2–January 2005.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. ROY M. WILLIS, Appellee.

Opinion filed June 3, 2005.

JUSTICE FITZGERALD delivered the opinion of the court:

The fourth amendment prohibits unreasonable searches and seizures, and consequently prohibits an unreasonable delay between a warrantless arrest and a probable cause determination. The fifth amendment prohibits involuntary self-incrimination, and consequently prohibits the admission of an involuntary confession into evidence at trial. When the defendant makes a confession during such a delay, the protections provided by these amendments intersect. The central issue in this case is whether a confession that may comport with the fifth amendment must be suppressed because it was obtained after a delay that violated the fourth amendment.

The appellate court decided that the proper test for the admissibility of such a confession is whether it was attenuated from the taint of the delay and that the defendant’s confession failed that test. The appellate court reversed the defendant’s felony criminal damage to property conviction. 344 Ill. App. 3d 868. We conclude that the proper test for the admissibility of such a confession is whether it was voluntary and that the defendant’s confession passed that test. We reverse the appellate court.

BACKGROUND

On the night of June 14, 1999, a fire started on the second-floor rear porch of a Chicago Heights apartment building. Morgan Beauchamp, a 70-year-old resident of the building, died of smoke inhalation. The next day, the Chicago Heights police department assigned the fire investigation to Detective Michael Lueser.

Detective Lueser first spoke with Ralph Lawson, Beauchamp’s next-door neighbor. On the night of the fire between 8 and 9 p.m., Lawson saw Kimbery Broadnex, the defendant’s girlfriend and Beauchamp’s reported paramour, retrieving a sweater from an area where she kept some clothes on Beauchamp’s rear porch. Lawson saw Broadnex leave and less than an hour later, between 9:30 and 9:45 p.m., saw the defendant looking for her. The defendant appeared angry and asked Lawson if he had seen Broadnex. Lawson answered that he had seen her, but that she had left. The defendant walked to the rear of Beauchamp’s apartment building and disappeared from Lawson’s view. The defendant then reappeared a short time later and walked away from the rear of the building. Lawson soon smelled smoke and noticed a fire on the second-floor rear porch. Lawson saw Beauchamp standing on his front porch and told him to leave the building, but Beauchamp went inside. Lawson did not see him again.

Detective Lueser then spoke with Broadnex. Broadnex had been living with the defendant until the day of the fire, when she moved her belongings from the defendant’s apartment to Beauchamp’s rear porch. She was not near Beauchamp’s apartment building when the fire started. Broadnex had a criminal case pending against the defendant for beating her, but, after talking to Lawson about his encounter with the defendant, she visited the defendant the next morning. The defendant told Broadnex that he was looking for her the night before. She detected a burning odor emanating from under the defendant’s bed, but did not inquire about it.

Detective Lueser reviewed the fire marshal’s reports. In an initial report, the fire marshal stated that the fire started on the second-floor rear porch, but could not determine its origin or cause. In the official report, the fire marshal again concluded that the fire started on the second-floor rear porch. It was intentionally set with an open flame, but without an accelerant.

Almost a month later, on July 13, 1999, Detective Lueser finally located the defendant. Lueser and another officer asked the defendant to accompany them to the Chicago Heights police department; the defendant agreed. He was not handcuffed and rode to the station in an unmarked squad car. At approximately 4 p.m., the defendant was placed in an interview room. Detective Lueser read 
Miranda
 warnings to the defendant from a preprinted form. The defendant said he understood his rights and signed the form. Over the course of several hours, the defendant spoke with Lueser and his superiors, Sergeant Gary Miller and Sergeant Jeff Bohlen. The defendant denied any involvement in the fire and denied going to the apartment building on the night of the fire. At 8:30 p.m., when the defendant requested to leave, Detective Lueser refused and instead placed him under arrest. The defendant was moved to the lockup. According to Lueser, the defendant was held pending further investigation. Detective Lueser left work at 9 p.m. In his absence, no other officer worked on the case against the defendant.

When Detective Lueser returned to work the next day at 1 p.m., he attempted to track down Lawson, Broadnex, and any other possible witnesses to the fire. Although Lueser spent “more than half” of his eight-hour shift working on the defendant’s case, he did not speak to the defendant on July 14; nor did any other officers. Lueser left work at 9 p.m. On July 15, 1999, while Detective Lueser again attempted to locate witnesses, Sergeant Miller asked the defendant if he would take a polygraph test. The defendant consented. Sergeant Miller and another officer transported the defendant to the Chicago police department for the test. The polygraph examiner read 
Miranda
 warnings to the defendant and administered the test. After the test, the polygraph examiner told the defendant that he had failed and that he was not telling the truth about his involvement in the fire. The defendant insisted the test was inaccurate. The officers took the defendant back to the Chicago Heights police department, where Detective Lueser spoke briefly with him around 8 p.m. about the results of the polygraph test. The defendant continued to deny any involvement in the fire.

On July 16, 1999, the police located Lawson and Broadnex and brought them to the station. Around 5 p.m., Lueser again interviewed the defendant. Detective Lueser repeated 
Miranda
 warnings to the defendant. The defendant said he understood his rights, signed the preprinted form, and spoke with Lueser for 20 minutes. Approximately 73 hours after his detention began, the defendant admitted his involvement in the fire and agreed to make a written inculpatory statement. In this statement, the defendant acknowledged that on the night of the fire he went to Beauchamp’s rear porch to look for Broadnex. The defendant did not find Broadnex, but noticed some of her clothing hanging from a shelf and stuffed into pillow cases, as well as several boxes of her belongings. The defendant became upset and flicked a cigarette near the pillow cases because he “wanted to start some of her clothing on fire.” According to the defendant,

“My sole intention was to burn some of her property ***. I knew that the cigarette would light everything on fire but I didn’t think it would spread beyond the storage room. After I threw the cigarette, I shut the storage door and then I walked outside ***.”

Lawson later identified the defendant in a lineup. The next day at 7:30 a.m., more than 87 hours after his detention began, the police presented the defendant to a judge for a bond hearing.

The defendant was indicted on five counts of first degree murder. See 720 ILCS 5/9–1 (West 1998). He filed a motion to quash his arrest. The circuit court of Cook County denied this motion, finding that the police had probable cause to arrest him. The defendant also filed a motion to suppress his inculpatory statement, arguing, 
inter alia
, that his confession was involuntary. The trial court denied this motion as well, stating:

“It seems clear to me that Mr. Willis was kept at the police station so that they could question him and try to get a statement from him. The issue though is whether given the amount of time involved and the totality of the circumstances the statement made was involuntary.

I find that the statement made–the State has met their burden of showing that the statement was voluntary based on defendant’s age, education, his intelligence. Even though the amount of time was long, that the totality of the circumstances, for instance, he voluntarily went and took the polygraph after 48 hours, and they were at adding another 24 [hours]. There is no indication that he was otherwise coerced or attacked or anything during the subsequent 24 hours. So that will be the finding of the Court.”

After a bench trial, the defendant was convicted of felony criminal damage to property (see 720 ILCS 5/21–1 (West 1998)) and sentenced to three years’ imprisonment. He appealed.

The appellate court affirmed the trial court’s ruling on the motion to quash, but reversed its ruling on the motion to suppress. 344 Ill. App. 3d 868. Following 
Gerstein v. Pugh
, 420 U.S. 103, 43 L. Ed. 2d 54, 95 S. Ct. 854 (1975), and 
County of Riverside v. McLaughlin
, 500 U.S. 44, 114 L. Ed. 2d 49, 111 S. Ct. 1661 (1991), the appellate court stated that the defendant’s “lawful detention became unlawful in violation of the fourth amendment to the United States Constitution after the passage of 48 hours.” 344 Ill. App. 3d at 878. The appellate court turned to the appropriate remedy for the fourth amendment violation and decided that the exclusionary rule should apply. 344 Ill. App. 3d at 884.

The appellate court then concluded that, under 
Brown v. Illinois
, 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254 (1975), the defendant’s inculpatory statement was not sufficiently attenuated from his illegal detention and should have been suppressed: “We find no intervening circumstances to explain defendant’s decision to confess after twice denying involvement, which leads us to believe the inherently coercive nature of the 73-hour detention produced a confession that was not sufficiently an act of free will, purged of primary taint.” 344 Ill. App. 3d at 886. Because the remaining evidence against the defendant did not provide proof beyond a reasonable doubt, the appellate court reversed the defendant’s conviction. 344 Ill. App. 3d at 887.

We allowed the State’s petition for leave to appeal. 177 Ill. 2d R. 315(a). On the legal issues in this appeal, our review is 
de novo
. See 
People v. Burdunice
, 211 Ill. 2d 264, 267 (2004).

ANALYSIS

Recently, in 
People v. Ballard
, 206 Ill. 2d 151 (2002), we touched upon the principles involved in this case. In discussing statutory rules of presentment, we quoted the committee comments to article 109 of the Code of Criminal Procedure of 1963. 
Ballard
, 206 Ill. 2d at 176. Because they succinctly frame the problem before us, we return to these comments:

“The most tedious and perplexing problem in the area is what happens between arrest and taking before a judicial officer (magistrate) for a judicial hearing on probable cause. In practice, the time between arrest and hearing is that in which police officers question the accused and obtain, if possible, a confession. If the case is weak, there is a tendency to delay. If a confession is obtained during such delay, should it be admissible in evidence at the trial?

Illinois continues to look at the confession cases solely in the light of the voluntary-involuntary test. This basis is grounded in the historical fact that involuntary confessions are untrustworthy and should not be admissible [citation]. In 1936 the federal courts began to exercise an influence in this area. [Citation.] This influence increased with the holding that unnecessary detention alone between arrest and hearing before a commissioner was sufficient to render inadmissible in evidence a confession obtained during such period, even though voluntary. [Citations.] Illinois, along with most states, has refused to follow the federal exclusionary rule in this area and still tests the confession against all factors and applies the voluntary-involuntary test [citation].” 725 ILCS Ann., art. 109, Committee Comments–1963, at 3 (Smith-Hurd 1992) (revised in 1970).

The committee comments predicted that, because the United States Supreme Court adopted the exclusionary rule for fourth amendment violations in 
Mapp v. Ohio
, 367 U.S. 643, 6 L. Ed. 2d 1081, 81 S. Ct. 1684 (1961), “it may not be long before the federal rule is extended to the states in unnecessary delay cases, and it is not too inconceivable that mere unnecessary delay, without a confession to consider, will be held to be a violation of Due Process under the 14th Amendment.” 725 ILCS Ann., art. 109, Committee Comments–1963, at 3 (Smith-Hurd 1992) (revised in 1970).

This forecast proved too dire in one respect. The Court never imposed the federal exclusionary rule–the so-called 
McNabb-Mallory 
rule
(footnote: 1)–on the states. Instead, it remained a rule of evidence in federal court because it lacked a constitutional source. See 
People v. Jackson
, 23 Ill. 2d 274, 277 (1961), citing 
Gallegos v. Nebraska
, 342 U.S. 55, 63-64, 96 L. Ed. 86, 93-94, 72 S. Ct. 141, 146-47 (1951). However, the Court did eventually address the constitutionality of “mere unnecessary delay,” five years after the committee comments were revised, in 
Gerstein
.

The 
Gerstein
 Court observed, “To implement the Fourth Amendment’s protection against unfounded invasions of liberty and privacy, the Court has required that the existence of probable cause be decided by a neutral and detached magistrate whenever possible.” 
Gerstein
, 420 U.S. at 112, 43 L. Ed. 2d at 64, 95 S. Ct. at 862. The Court then conceded that warrantless arrests are a practical compromise in which

“a policeman’s on-the-scene assessment of probable cause provides legal justification for arresting a person suspected of crime, and for a brief period of detention to take the administrative steps incident to arrest. Once the suspect is in custody, however, the reasons that justify dispensing with the magistrate’s neutral judgment evaporate. There no longer is any danger that the suspect will escape or commit further crimes while the police submit their evidence to a magistrate. And, while the State’s reasons for taking summary action subside, the suspect’s need for a neutral determination of probable cause increases significantly.” 
Gerstein
, 420 U.S. at 113-14, 43 L. Ed. 2d at 65, 95 S. Ct. at 863.

Accordingly, the Court held that a judicial determination of probable cause must precede an “extended restraint of liberty following arrest.” 
Gerstein
, 420 U.S. at 114, 43 L. Ed. 2d at 65, 95 S. Ct. at 863. The Court left the states free to fashion appropriate procedures, provided they afford a fair and reliable judicial determination of probable cause either before or “promptly” after an arrest. 
Gerstein
, 420 U.S. at 125, 43 L. Ed. 2d at 71-72, 95 S. Ct. at 868-69.

The Court defined “promptly” in 
McLaughlin
. The Court initially observed, “
Gerstein
 held that probable cause determinations must be prompt–not immediate.” 
McLaughlin
, 500 U.S. at 54, 114 L. Ed. 2d at 61, 111 S. Ct. at 1669. Noting that this flexibility proved problematic for lower courts left to grapple with systematic challenges to state procedures that tried to meet this vague standard, the Court stated:

“Our task in this case is to articulate more clearly the boundaries of what is permissible under the Fourth Amendment. Although we hesitate to announce that the Constitution compels a specific time limit, it is important to provide some degree of certainty so that States and counties may establish procedures with confidence that they fall within constitutional bounds. Taking into account the competing interests articulated in 
Gerstein
, we believe that a jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of 
Gerstein
. For this reason, such jurisdictions will be immune from systematic challenges.”
 McLaughlin
, 500 U.S. at 56, 114 L. Ed. 2d at 62-63, 111 S. Ct. at 1670.

The Court further stated that even if a probable cause hearing is held within this 48-hour window, the State may still violate 
Gerstein
 if the defendant can prove unreasonable delay–for example, delay to gather additional evidence to justify retroactively the defendant’s arrest, delay to show ill will toward the defendant, or delay for its own sake. 
McLaughlin
, 500 U.S. at 56, 114 L. Ed. 2d at 63, 111 S. Ct. at 1670. The Court continued:

“Where an arrested individual does not receive a probable cause determination within 48 hours, the calculus changes. In such a case, the arrested individual does not bear the burden of proving an unreasonable delay. Rather, the burden shifts to the government to demonstrate the existence of a bona fide emergency or other extraordinary circumstance.” 
McLaughlin
, 500 U.S. at 57, 114 L. Ed. 2d at 63, 111 S. Ct. at 1670.

Here, the defendant was held for more than 87 hours after his warrantless arrest before he was presented to a judge for a probable cause determination. He confessed after 73 hours. The appellate court was correct: the State has never contended or attempted to show that this delay was defensible due to an emergency or extraordinary circumstance. 344 Ill. App. 3d at 878. The defendant’s detention thus ran afoul of 
Gerstein
 and 
McLaughlin
, and we must decide the proper remedy. Since 
McLaughlin
, the Supreme Court has remained silent on this issue, declining to answer whether an inculpatory statement obtained during an unreasonably long delay must, for that reason, be suppressed. See 
Powell v. Nevada
, 511 U.S. 79, 84-85, 128 L. Ed. 2d 1, 7-8, 114 S. Ct. 1280, 1283-84 (1994).

The vast majority of jurisdictions have approached this problem, like the trial court did here, as a simple matter of voluntariness. See 2 W. LaFave, Criminal Procedure §6.3(c), at 475 (2d ed. 1999). In these jurisdictions, an inculpatory statement obtained during an unreasonably long delay between a warrantless arrest and a probable cause hearing must be suppressed only if it was involuntary. See, 
e.g.
, 
Bush v. Alabama
, 695 So. 2d 70, 124 (Ala. Crim. App. 1995); 
Riney v. Alaska
, 935 P.2d 828, 834-35 (Alaska App. 1997); 
Peterson v. Indiana
, 674 N.E.2d 528, 538-39 (Ind. 1996); 
Michigan v. Manning
, 243 Mich. App. 615, 642, 624 N.W.2d 746, 759 (2000); 
Nebraska v. Nissen
, 252 Neb. 51, 68, 560 N.W.2d 157, 171 (1997); 
New Jersey v. Tucker
, 137 N.J. 259, 272, 645 A.2d 111, 117 (1994); accord 
West v. Johnson
, 92 F.3d 1385, 1404 (5th Cir. 1996); 
United States v. Perez-Bustamante
, 963 F.2d 48, 53 (5th Cir. 1992). See generally R. Eclavea, Annotation, 
Admissibility of Confession or Other Statement Made by Defendant as Affected by Delay in Arraignment–Modern State Cases
, 28 A.L.R.4th 1121, §6 (1984 & Supp. 2005) (“Broad view that delay is merely a factor in determining admissibility of confession”).

Other jurisdictions have approached this problem, like the appellate court here did, as a matter of attenuation. In these jurisdictions, an inculpatory statement obtained during such a delay must be suppressed unless it was attenuated from the taint of the 
Gerstein
/
McLaughlin
 violation. See, 
e.g.
, 
Chavez v. Florida
, 832 So. 2d 730, 756-57 (Fla. 2002); 
Powell v. Nevada
, 113 Nev. 41, 46, 930 P. 2d 1123, 1126 (1997); 
Tennessee v. Huddleston
, 924 S.W.2d 666, 674 (Tenn. 1996); accord 
Anderson v. Calderon
, 232 F.3d 1053, 1071 (9th Cir. 2000), 
overruled on other grounds
, 
Bittaker v. Woodford
, 331 F.3d 715 (9th Cir. 2003); but see 
Shope v. Maryland
, 41 Md. App. 161, 171, 396 A.2d 282, 288 (Ct. Spec. App. 1979) (suppressing the defendant’s confession after an unreasonably long delay, but characterizing that decision as “burning the barn to get rid of the mice”). In effect, these courts have fashioned what could be termed a “fruit of the poisonous illegal detention” rule. See G. Thomas, 
The Poisoned Fruit of Pretrial Detention
, 61 N.Y.U. L. Rev. 413 (1986).

The appellate court here noted this split in authority, then turned to our opinion in 
People v. Chapman
, 194 Ill. 2d 186 (2000). According to the appellate court, “When faced with an alleged 
McLaughlin
 violation, the Illinois Supreme Court *** did not limit its analysis to the issue of voluntariness.” 344 Ill. App. 3d at 880. The appellate court continued: “After finding the defendant’s statement was voluntary, the court went on to determine suppression was not necessary under the fourth amendment because an emergency *** justified the delay in presentment.” 344 Ill. App. 3d at 880.

The appellate court mischaracterized our holding in 
Chapman
. In 
Chapman
, we addressed the defendant’s argument that a 29-hour delay between his warrantless arrest and his preliminary hearing violated the fourth amendment per 
Gerstein
 and 
McLaughlin
. 
Chapman
, 194 Ill. 2d at 215. We briefly discussed 
McLaughlin
 and its holding that a delay of more than 48 hours in the absence of a 
bona fide
 emergency or extraordinary circumstance violates the fourth amendment. 
Chapman
, 194 Ill. 2d at 215. We concluded that an emergency justified the delay and, as a result, there was no fourth amendment violation. 
Chapman
, 194 Ill. 2d at 215-16. We did not reach the question of a proper remedy.

The appellate court further observed that, in 
Chapman
, this court recognized the difference between an exclusion analysis under the fourth amendment and one under the fifth amendment: “Otherwise, there would have been no reason for a separate examination of facts that justified the delay in taking the defendant before a judge for a probable cause decision.” 344 Ill. App. 3d at 880. Quoting 
Brown
, 422 U.S. at 601-02, 45 L. Ed. 2d at 426, 95 S. Ct. at 2260-61, and 
Oregon v. Elstad
, 470 U.S. 298, 306, 84 L. Ed. 2d 222, 230, 105 S. Ct. 1285, 1291 (1985), the appellate court explained that the taint of a fourth amendment violation is not dissipated merely because an inculpatory statement passes the fifth amendment test for voluntariness. 344 Ill. App. 3d at 880-81, citing 
People v. White
, 117 Ill. 2d 194, 223 (1987). The appellate court concluded:

“The exclusionary rule cannot adequately deter police from violating Fourth Amendment rights if its application is limited to involuntary statements. Under the voluntariness approach ***, the exclusionary rule holds police accountable for the treatment a suspect receives during an illegal detention, but does nothing to deter them from illegally detaining a suspect in the first place. The approach creates no incentive to comply with 
McLaughlin
 and 
Gerstein
.

We are persuaded the decisions we have cited require us to maintain a distinction between the interests served by the fourth and fifth amendments. We deal with the kind of unlawful detention held unlawful in 
McLaughlin
. This is a fourth amendment issue. ***

The deterrent purpose of the exclusionary rule would be well served by suppression of statements that are unpurged of the primary taint created by a 
McLaughlin
 violation. Suppression would discourage police officers from parking an arrestee in a jail cell for more than 48 hours without good reason. It would deprive them of any benefit gained by their violation of the fourth amendment’s guarantee that it will ‘furnish meaningful protection from unfounded interference with liberty.’ ” 344 Ill. App. 3d at 883-84, quoting 
Gerstein
, 420 U.S. at 114, 43 L. Ed. 2d at 65, 95 S. Ct. at 863.

Thus, the appellate court, in the name of maintaining a sharp distinction between fourth and fifth amendment doctrines, held that an inculpatory statement obtained during a delay which violates 
Gerstein/McLaughlin
 must be suppressed if it is the fruit of that delay, regardless of whether it was voluntary.

The State does not violate the fourth amendment when it introduces evidence obtained in violation of the fourth amendment. 
Pennsylvania Board of Probation & Parole v. Scott
, 524 U.S. 357, 362, 141 L. Ed. 2d 344, 351, 118 S. Ct. 2014, 2019 (1998). Rather, a fourth amendment violation is “fully accomplished” by the illegal search or seizure, and excluding evidence cannot undo the invasion of the defendant’s rights. 
United States v. Leon
, 468 U.S. 897, 906, 82 L. Ed. 2d 677, 687, 104 S. Ct. 3405, 3411-12 (1984). Like the 
McNabb-Mallory
 rule, the exclusionary rule that accompanies the fourth amendment has no constitutional footing. Instead, it is a judicially created, prudential remedy that prospectively protects fourth amendment rights by deterring future police misconduct. 
United States v. Calandra
, 414 U.S. 338, 348, 38 L. Ed. 2d 561, 571, 94 S. Ct. 613, 620 (1974); accord 
People v. Lampitok
, 207 Ill. 2d 231, 241 (2003). Its application has been trimmed to instances where its remedial objectives will be most effectively served. 
Arizona v. Evans
, 514 U.S. 1, 11, 131 L. Ed. 2d 34, 44, 115 S. Ct. 1185, 1191 (1995). That is, it applies only where its deterrent benefits outweigh its substantial social costs. See 
Leon
, 468 U.S. at 907, 82 L. Ed. 2d at 688, 104 S. Ct. at 3412; 
United States v. Janis
, 428 U.S. 433, 453-54, 49 L. Ed. 2d 1046, 1060, 96 S. Ct. 3021, 3032 (1976). Our inquiry in this case thus becomes whether the benefit of excluding a putatively voluntary confession in order to deter police from violating 
Gerstein
 and 
McLaughlin
 outweighs the steep social costs of such a rule. We conclude that it does not for three reasons.

First, other remedies, such as the civil rights suits anchoring both 
Gerstein
 and 
McLaughlin
, are available to persons subject to unreasonably long delays. See 42 U.S.C. §1983 (2000); 
Manning
, 243 Mich. App. at 638, 624 N.W.2d at 757.

Second, we must “carefully balance the legitimate aims of law enforcement against the right of our citizens to be free from unreasonable governmental intrusion.” 
People v. Tisler
, 103 Ill. 2d 226, 245 (1984). The police need latitude to conduct investigations, and a strict exclusionary rule for 
Gerstein/McLaughlin
 violations would inject courts into not only the details of police work, but also the details of police staffing and pay decisions. Further, the United States Supreme Court has long counseled against expanding the exclusionary rule beyond the contexts where it currently applies. See 
Lego v. Twomey
, 404 U.S. 477, 488-89, 30 L. Ed. 2d 618, 627, 92 S. Ct. 619, 626 (1972). Though the exclusionary rule, through its deterrent effect, laudably secures constitutional rights, it also deflects criminal trials from their basic focus by erecting barriers between the jury and truthful, probative evidence. See 
Colorado v. Connelly
, 479 U.S. 157, 166, 93 L. Ed. 2d 473, 484, 107 S. Ct. 515, 521 (1986); 
United States v. Payner
, 447 U.S. 727, 734, 65 L. Ed. 2d 468, 476, 100 S. Ct. 2439, 2445 (1980) (“unbending application of the exclusionary sanction to enforce ideals of governmental rectitude would impede unacceptably the truth-finding functions of judge and jury”).

In fact, the constitutional case for excluding statements obtained during an unreasonably long delay is less substantial than it once was because, since fashioning the 
McNabb-Mallory
 rule, the Supreme Court has provided “other effective means for safeguarding the vital Fourth and Fifth Amendment interests” at stake–namely, cases such as 
Dunaway v. New York
, 442 U.S. 200, 60 L. Ed. 2d 824, 99 S. Ct. 2248 (1979), where the Court held that statements which are the fruit of an illegal arrest must be suppressed, and 
Miranda
. See 2 W. LaFave, Criminal Procedure §6.3(c), at 475-76 (2d ed. 1999); 
People v. Cipriano
, 431 Mich. 315, 330-31, 429 N.W.2d 781, 788 (1988). It would be incongruous to apply a newly minted constitutional version of the 
McNabb-Mallory
 rule in order to exclude an inculpatory statement, when neither the 
McNabb-Mallory
 rule nor the exclusionary rule are constitutionally required and the defendant’s rights are otherwise protected.

Third, and relatedly, the delay in presenting a defendant to a judge for a probable-cause determination will not be ignored if the confession is not excluded under the fourth amendment. We have repeatedly held, both before and after 
Gerstein
 and 
McLaughlin
, that such a delay remains a factor to consider in determining whether a confession was voluntary. 
Chapman
, 194 Ill. 2d at 214; accord 
Ballard
, 206 Ill. 2d at 176. In 
People v. Dees
, 85 Ill. 2d 233, 237 (1981), we discussed 
Gerstein
 and then stated, “Delay alone *** has not heretofore been considered sufficient cause to penalize the prosecution to the extent of excluding confessions obtained during the period between arrest and appearance before a judge.” Again, in 
People v. House
, 141 Ill. 2d 323, 380 (1990), we repeated that delay in presenting the defendant to a judge for a probable-cause determination “does not of itself vitiate a confession but is merely a factor to be considered on the question of voluntariness.” See 
People v. Williams
, 303 Ill. App. 3d 33, 43 (1999) (citing 
Gerstein
 for its constitutional rule and 
House
 for its holding that “[f]ailure to promptly present defendant before a magistrate does not invalidate a confession 
per se
, but it is a factor to consider in determining the voluntariness of a statement”); 
People v. Groves
, 294 Ill. App. 3d 570, 577 (1998) (citing 
McLaughlin
 for its constitutional rule and 
House
 for its holding that “delay is a factor to be considered when determining whether the confession was voluntary”); 
People v. Goree
, 115 Ill. App. 3d 157, 161 (1983) (“We find nothing in 
Gerstein
 *** to cast doubt on the statements in the Illinois cases that a confession obtained during detention in violation of constitutional or statutory prompt presentment requirements will not be suppressed unless involuntary”).

The holdings in these cases track our holdings in pre-
Gerstein
 cases. See 
Howell
, 60 Ill. 2d at 122 (“We have heretofore considered delay in presenting a defendant to a judge following his arrest only as a circumstance to be considered by the court in determining the voluntariness of any statement given by the defendant during this delay”); 
People v. Johnson
, 44 Ill. 2d 463, 469 (1970) (“an unreasonable delay in presenting a defendant before a magistrate is a circumstance to be taken into consideration in determining whether or not his confession was voluntary”); 
People v. Nicholls
, 42 Ill. 2d 91, 101 (1969) (“[i]f any unlawfulness of detention be assumed, such detention does not of itself invalidate a confession but it was a circumstance to be considered in determining if a confession was voluntary”); 
People v. Novak
, 33 Ill. 2d 343, 348 (1965) (“it is the law of this State that illegal detention in an of itself does not render inadmissible a confession given during the period of illegal detention if the confession is voluntarily given”); 
People v. Miller
, 13 Ill. 2d 84, 100-01 (1958) (“detention without process does not itself render a confession inadmissible if it was otherwise shown to be voluntary”). See also 
People v. Brooks
, 51 Ill. 2d 156 (1972); 
People v. Higgins
, 50 Ill. 2d 221 (1972); 
People v. Stone
, 45 Ill. 2d 100 (1970); 
People v. Kelley
, 44 Ill. 2d 315 (1970); 
People v. Underhill
, 38 Ill. 2d 245 (1967); 
People v. Carter
, 39 Ill. 2d 31 (1968); 
People v. Taylor
, 33 Ill. 2d 417 (1965); 
People v. Harper
, 36 Ill. 2d 398 (1967).

The great weight of Illinois authority rests with the State, and we refuse to depart from it. We return to our statement more than 50 years ago in 
People v. Hall
, 413 Ill. 615, 623-24 (1953):

“A voluntary confession by a competent person of the guilt of a crime is the highest type of evidence–an involuntary confession obtained by brutality or coercion is wholly unreliable and is the most flagrant violation of the principles of freedom and justice. The decisions of this court have always been guided by these principles and until some sound reasoning appears showing a better test for the admissibility of confessions we shall adhere to those principles.”

See 
Culombe v. Connecticut
, 367 U.S. 568, 602, 6 L. Ed. 2d 1037, 1057-58, 81 S. Ct. 1860, 1879 (1961) (“The ultimate test [for admissibility] remains that which has been the only clearly established test in Anglo-American courts for two hundred years: the test of voluntariness. Is the confession the product of an essentially free and unconstrained choice by its maker?”). When faced with a 
Gerstein/McLaughlin
 violation, we ask simply whether the confession was voluntary–whether the inherently coercive atmosphere of the police station was the impetus for the confession or whether it was the product of free will. See 
People v. Morgan
, 197 Ill. 2d 404, 437 (2001). If so, it is admissible. If not, it is inadmissible. While we appreciate the appellate court’s well-reasoned scholarship, the voluntariness test and the flexibility it offers in responding to factual nuance more appropriately balance the rights of the accused with the requirements of law enforcement.
(footnote: 2)
 To determine whether the defendant’s confession was voluntary, we consider the totality of the circumstances surrounding it, including the defendant’s age, intelligence, education, experience, and physical condition at the time of the detention and interrogation; the duration of the interrogation; the presence of 
Miranda
 warnings; the presence of any physical or mental abuse; and the legality and duration of the detention. See 
Ballard
, 206 Ill. 2d at 177, citing 
People v. Gilliam
, 172 Ill. 2d 484, 500-01 (1996). We will not disturb the trial court’s decision on this issue unless it was against the manifest weight of the evidence. 
Ballard
, 206 Ill. 2d at 177. Here, the trial court skillfully examined all of these factors and concluded that the defendant’s inculpatory statement was indeed voluntary. This finding was not against the manifest weight of the evidence.

The defendant’s presentence investigation report reveals that in 1999 he was 45 years old. He graduated from Oakwood College in Huntsville, Alabama, and later received a Masters Degree in Divinity from Andrews University in Berrien Springs, Michigan. In 1971, at age 17, he was sentenced to five years’ imprisonment in Georgia for burglary. In 1975, at age 21, he was sentenced to five years’ imprisonment in Georgia for robbery. The defendant stated that he was in good health with no need for ongoing medical treatment.

The defendant was interrogated three times in the 73 hours before his confession–twice at the Chicago Heights police department and once at the Chicago police department during a polygraph test. He received 
Miranda
 warnings each time he was questioned. The record contains preprinted forms with the warnings for each of the two interrogations at the Chicago Heights police department. The defendant initialed both forms next to each of the five warnings and signed both forms at the bottom to indicate that he understood his rights. Sergeant Miller testified that prior to leaving for the polygraph examination, he asked the defendant “if he understood what we were doing and that we were going to the Chicago Police Department for [a] polygraph exam. And he said he knew that and he wanted to go.” According to the polygraph examiner, the defendant signed a “polygraph subject consent form,” which included 
Miranda
 warnings as well as a statement that the test was voluntary.

The first interrogation, immediately after the defendant’s arrest on July 13, 1999, was the longest; it lasted more than four hours. The record does not indicate how long the polygraph test lasted. The third interrogation lasted approximately 20 minutes, until the defendant confessed. Detective Lueser reduced the defendant’s inculpatory statement to writing. The preprinted statement form asked, “Was this statement made of your own free will and not through fear, through inducements or promises of reward of any kind?” The defendant wrote, “Yes.”

The defendant never indicated that he was mistreated physically or psychologically. He never complained about not receiving food or drink, and he told Assistant State’s Attorney Jason Danielian that the police provided him food, drink, and cigarettes. The defendant also told Danielian that he had slept in the lockup and that he had no complaints other than a chronically stiff back. According to Danielian, the defendant provided an explanation regarding his decision to confess:

“His transformation, if you will, from his lack of veracity about the incident which he characterized as not being truthful about the incident to his truthfulness was a result of him undergoing a sense of feeling guilty about not being honest about what had–what he had done and how he had approached the detectives about what had happened.”

The police had probable cause to arrest the defendant, and his detention was initially legal. After 48 hours, it violated 
Gerstein
 and 
McLaughlin
. Sergeant Bohlen testified that officers were attempting to locate Lawson and Broadnex to satisfy the demands of the State’s Attorney’s Felony Review Unit: “The process with the Felony Review Unit is if you have two people that say a certain person committed a crime, you just conduct a physical line-up.” Bohlen’s explanation does not excuse or justify the delay (see 
Kyle v. Patterson
, 957 F. Supp. 1031, 1034 (N.D. Ill. 1997)), but it does indicate that the police were more engaged in the investigation than the appellate court’s charges of “studied indifference to defendant’s jail cell presence” and “wilful disregard of 
McLaughlin
” (344 Ill. App. 3d at 887) would indicate.

As we were in 
House
, we are again troubled by the delay in presenting the defendant before a judge for a probable cause determination. We agree with the State and advise police that an extraordinarily long delay which itself raises the inference of police misconduct could, at some point, render any confession involuntary. See 
White
, 117 Ill. 2d at 224 (“a long and illegal detention may in itself impel the defendant to confess”); 
Manning
, 243 Mich. App. at 643, 624 N.W.2d at 759 (“The longer the delay, the greater the probability that the confession will be held involuntary. At some point, a delay will become so long that it alone is enough to make a confession involuntary”). This case approaches, but does not cross, that line.

CONCLUSION

For the reasons that we have discussed, the judgment of the appellate court is reversed and the judgment of the circuit court is affirmed.

Appellate court judgment reversed;

circuit court judgment affirmed.

FOOTNOTES
1:     
1
The 
McNabb-Mallory
 rule derives from two United States Supreme Court cases: 
McNabb v. United States
, 318 U.S. 332, 87 L. Ed. 819, 63 S. Ct. 608 (1943), and 
Mallory v. United States
, 354 U.S. 449, 1 L. Ed. 2d 1479, 77 S. Ct. 1356 (1957). In these cases, the Court held that a defendant’s right to a prompt arraignment should be enforced by a strict exclusionary rule, barring the prosecution from offering into evidence any inculpatory statement obtained during an unnecessary postarrest delay, regardless of whether the statement was involuntary. Congress undermined the 
McNabb-Mallory
 rule in 1968 when it enacted 18 U.S.C. §3501, which used voluntariness as the real gauge of admissibility.

We have uniformly rejected the 
McNabb-Mallory
 rule. See, 
e.g.
, 
People v. Howell
, 60 Ill. 2d 117, 122 (1975); 
People v. Brooks
, 51 Ill. 2d 156, 165 (1972); 
People v. Nicholls
, 44 Ill. 2d 533, 538 (1970); 
People v. Kees
, 32 Ill. 2d 299 (1965); 
People v. Reader
, 26 Ill. 2d 210 (1962); 
People v. Melquist
, 26 Ill. 2d 22 (1962).

2:     
2
People v. Nicholas
, 351 Ill. App. 3d 433 (2004), and 
People v. Mitchell
, 354 Ill. App. 3d 396 (2004), which track the analysis of the appellate court opinion here, are overruled to the extent that they employ any analysis except voluntariness in evaluating the admissibility of confessions obtained during an unreasonably long delay.