SECOND DIVISION
August 29, 2006

No. 1-05-2208


THE PEOPLE OF THE STATE OF ILLINOIS,   )   Appeal from the
                                           )   Circuit Court of
       Plaintiff-Appellant,        )   Cook County.
                                           )
    v.                              )
                                         )
MARCHELLO SAMS,                 )   Honorable
                                       )   Dennis J. Porter,
       Defendant-Appellee.        )   Judge Presiding.


JUSTICE SOUTH delivered the opinion of the court:

The State appeals from an order of the trial court granting defendant Marchello Sams's motion to suppress his statement.  On appeal, the State contends that the trial court erroneously granted the motion where it determined that defendant's statement was involuntary based on his prior lengthy detainment.

Briefly stated, on September 12, 2002, defendant, who was 20 years old at the time, voluntarily went to a police station in relation to the murder investigation of the victim, George LeVonte, who was the one-year-old son of defendant's girlfriend. Defendant then continuously remained at the police station until late on September 15, 2002.  Throughout that time, defendant was interviewed by numerous detectives and assistant State's Attorneys (ASA).  Initially, defendant denied involvement in the victim's death; however, he eventually issued a verbal and written inculpatory statement.  After memorializing his statement on September 15, 2002, defendant was charged with first degree

murder and aggravated battery.  Defendant then filed a motion to suppress his statement on the basis that it was "obtained as a result of psychological and mental coercion," specifically noting his "prolonged illegal detention."

The evidence adduced at the suppression hearing demonstrated that, around 11 p.m on September 12, defendant was initially interviewed by Detectives Lawrence Aikin and Jamie Kane.  Prior to that, the detectives interviewed the victim's mother, Carrie Anne Collins, her brother Kirkland Collins, and several others. The initial interview lasted approximately one hour, during which defendant admitted caring for the child on the day in question; however, he denied involvement in the victim's death.  At the conclusion of the interview, Aikin and Kane requested that defendant, Carrie Anne and Kirkland remain at the police station overnight in order to assist in the continuing investigation the next day.  According to Aikin, they all agreed and none were placed in handcuffs.

Early the next morning, on September 13, Aikin and Kane returned to the police station to check on defendant, Carrie Anne and Kirkland and to offer them coffee and food before the detectives left to investigate the crime scene.  Aikin and Kane returned four or five hours later, and interviewed Carrie Anne, Kirkland and defendant for several hours.  Defendant again denied involvement in the victim's death.  That night, at about 10 p.m.,

Detectives Paul Zacharias, James Gildea and Michael Cusack issued the Miranda warnings and interviewed defendant for approximately 45 minutes. During the interview, Gildea told defendant that the victim was being examined to determine the cause of death, and that defendant's original statement did not explain how the victim could have been injured. Defendant subsequently changed his story and made an inculpatory statement describing how he may have harmed the victim.

During the morning of September 14, the detectives contacted Carrie Anne in light of defendant's inculpatory statement; however, she was not available until the late afternoon. Later that evening, after again advising him of the Miranda rights, Zacharias and ASA Lisette Mojica interviewed defendant and he gave essentially the same inculpatory statement. Then, very late that night, ASA John Brassil arrived at the police station and requested that all witnesses be contacted to make an additional statement.

Around 1:30 a.m. on September 15, defendant was Mirandized and reiterated essentially the same inculpatory statement to ASAs Brassil and Mojica. Then, at about 4 p.m., after interviewing the other witnesses, ASA Athena Farmakis reissued the Miranda warnings and interviewed defendant with Zacharias for approximately 45 minutes. Defendant stated that he had not been mistreated while at the police station. Thereafter, Farmakis

interviewed more witnesses and then spoke with defendant around 10:30 p.m. At that time, defendant indicated that he wanted to memorialize his inculpatory statement. Farmakis wrote out the statement on a preprinted form, which included the Miranda warnings. Defendant signed the form, indicating that he read and understood the Miranda rights and agreed with the statement. Defendant was subsequently charged with first degree murder and aggravated battery.

Detectives Aikin, Kane and Gildea and ASAs Brassil and Farmakis all testified that defendant's statements were made voluntarily, and that he was never physically abused or threatened. Defendant's mother and grandmother, however, testified that, when they visited defendant in jail on September 16, they noticed marks on his person indicative of physical abuse.

Defendant testified that he was handcuffed at some point on September 12, and that Detective Aikin physically abused him throughout the time he was detained. Defendant stated that the inculpatory version of events was suggested to him by the officers. He further testified that he was told he could leave the police station if he signed the statement. Defendant admitted that he signed the statement without reading it because he "didn't [sic] know it was going to cause me this much trouble." On cross-examination, defendant admitted that the ASA

read his written statement aloud; that he signed every page and initialed two corrections; and signed the page acknowledging that "no threats or promises [had] been made to him in return for [the] statement" and that he gave the "statement freely and voluntarily and because it [was] the truth."

The trial court ultimately granted defendant's motion to suppress his statement. In its findings, the trial court noted that defendant arrived at the police station voluntarily; however, the court questioned whether defendant voluntarily agreed to remain overnight. The court, therefore, concluded that defendant was under arrest at some time on September 13, and that his written statement was completed at 10:30 p.m. on September 15. The court then determined that there was no credible evidence of any physical abuse or mistreatment. Further, the court found that defendant was an adult of seemingly reasonable intelligence with some experience in the criminal justice system due to prior felony arrests. In addition, the court found that defendant was advised of his constitutional rights, and that his interrogations were intermittent and "not overly long." The court, however, determined that defendant was detained for an "enormously long time."

Although the court noted the "so-called 48 hour rule," it also noted the rule that "delay alone is insufficient" as a basis for excluding a defendant's incriminating statement. Ultimately,

the trial court concluded that "this [was] not merely delay alone" on the basis that the police held defendant during their investigation despite the fact that he denied involvement in the offense.  In that regard, the court stated that the police could have released defendant and then brought him back for further investigation if necessary, "rather than leaving him there for days maintaining his innocence, and then eventually, you would think, wearing him down."  Consequently, the trial court suppressed defendant's written statement and any statement given after his arrest on September 13.  This timely appeal followed.

The trial court's factual determinations are awarded great deference, such that we will not disturb those findings unless they are against the manifest weight of the evidence.  People v. Willis, 215 Ill. 2d 517, 536 (2005).

In Gerstein v. Pugh, 420 U.S. 103, 43 L. Ed. 2d 54, 95 S. Ct. 854 (1975), the Supreme Court found that, pursuant to the fourth amendment, a suspect is entitled to a probable cause hearing before or promptly after his arrest.  Generally, a probable cause hearing within 48 hours of a defendant's warrantless arrest will satisfy this requirement.  People v. Nicholas, 218 Ill. 2d 104, 116 (2006), citing County of Riverside v. McLaughlin, 500 U.S. 44, 56, 114 L. Ed. 2d 49, 63, 111 S. Ct. 1661, 1670 (1991).  However, "if the defendant can prove 'unreasonable delay' ——chiefly, delay to gather additional

evidence to justify the defendant's arrest," then the Gerstein/McLaughlin rule may be violated even if the hearing is held within 48 hours.  Nicholas, 218 Ill. 2d at 116.

Recently, in Willis, the supreme court reiterated the well-established rule that prolonged confinement in presenting an arrested defendant before a judge is not enough to establish a fourth amendment violation.  See Willis, 215 Ill. 2d at 533-35.  Rather, the long-standing voluntariness test determines whether a defendant's statement is admissible.  Willis, 215 Ill. 2d at 535.  Specifically, the test is "whether the inherently coercive atmosphere of the police station was the impetus for the confession or whether it was a product of free will."  Willis, 215 Ill. 2d at 535.  Further, voluntariness is ascertained by the totality of the circumstances, such that courts consider the "defendant's age, intelligence, education, experience, and physical condition at the time of the detention and interrogation; the duration of the interrogation; the presence of Miranda warnings; the presence of any physical or mental abuse; and the legality and duration of the detention."  Willis, 215 Ill. 2d at 536.  However, "an extraordinarily long delay which itself raises the inference of police misconduct could, at some point, render any confession involuntary."  Willis, 215 Ill. 2d at 538.

In the instant case, defendant was held at the police

station for over 72 hours prior to being charged. In determining that defendant's statement was involuntary, the trial court made numerous findings that were not against the manifest weight of the evidence. Defendant, a seemingly intelligent 20-year-old with some experience in the criminal justice system, was arrested sometime within the primary 24-hour period as it was unlikely that he would have agreed to remain at the police station overnight. However, he was not physically or mentally abused during his detention. Further, although he was apprised of his constitutional rights and was interrogated sporadically for acceptable periods of time, defendant was detained for an "enormously long time." The trial court stated that "delay alone is insufficient" to establish a fourth amendment violation; however, it determined that, where defendant was continuously held despite repeated denials of involvement in the offense, "this [was] not merely delay alone." Rather, defendant was unreasonably detained while the police gathered evidence. See Nicholas, 218 Ill. 2d at 116. This process eventually wore defendant down and created a lack of free will. See Willis, 215 Ill. 2d at 535, 538.

Based on the totality of the circumstances, we find that the trial court's ruling was not against the manifest weight of the evidence. Accordingly, we conclude that defendant's statement was involuntary.

Accordingly, we affirm the judgment of the circuit court of Cook County.

Affirmed.

WOLFSON and HALL, JJ., concur.