NOTICE
Decision filed 05/02/16. The text of this decision may be changed or corrected prior to the filing of a Peti ion for Rehearing or the disposition of the same.

2016 IL App (5th) 130294

NO. 5-13-0294

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jackson County. |
| | ) | |
| v. | ) | No. 12-CF-253 |
| | ) | |
| GALON E. MACK, | ) | Honorable |
| | ) | William G. Schwartz, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE GOLDENHERSH delivered the judgment of the court, with opinion.
Justices Chapman and Cates concurred in the judgment and opinion.

**OPINION**

¶ 1 After a jury trial in the circuit court of Jackson County, defendant, Galon E. Mack, was convicted of aggravated criminal sexual abuse (720 ILCS 5/12-16(d) (West 2010)) and sentenced to 10 years in the Department of Corrections followed by 2 years of mandatory supervised release. In this direct appeal, defendant raises two issues: (1) whether the evidence was so incredible and improbable that it cannot serve as proof beyond a reasonable doubt; and (2) whether defense counsel was ineffective. We affirm.

1

¶ 2                                    FACTS

¶ 3      Defendant, age 44 at the time of trial, was charged by information with one count of aggravated criminal sexual abuse for allegedly rubbing the vagina of the victim, age 15, with his hand. Defendant and the victim were acquainted as defendant was engaged to the mother of one of the victim's friends, Si'Era. The victim was spending the night at Si'Era's house when the alleged abuse occurred.

¶ 4      The victim testified she and several friends attended an adult-chaperoned teen party which ended at midnight. She then went back to Si'Era's house to spend the night. The victim spent time at Si'Era's house almost every weekend. On this particular weekend, she went to Si'Era's house on Friday night and was staying through the weekend. On Saturday night, there were five teenage girls together, including Si'Era and her sister La'Shaunta, the victim, and two more friends, Jas and Ti'Ann.

¶ 5      The victim testified the girls went to bed about 3 a.m. She slept in Si'Era's bedroom, along with Si'Era and Ti'Ann. La'Shaunta and Jas slept in another bedroom. The third bedroom was occupied by defendant and Si'Era's mother. There were two beds in Si'Era's room. The victim slept in her own bed while Si'Era and Ti'Ann shared a bed. The bed in which the victim slept was on the far side of the room pushed against a wall. The victim testified she fell asleep, but was "woken up to [defendant] touching on my private area." She said defendant was touching her "in, like, a circular motion." According to the victim, the defendant's hand was "under the cover, over my clothes." The prosecutor asked the victim what she meant by "private area" and the victim

responded, "My vagina." She specifically testified defendant "was between my thighs rubbing my vagina in circular motions."

¶ 6    The victim screamed. Si'Era and Ti'Ann woke up when they heard the victim scream. Defendant told the victim he was sorry and he just scared her. The victim testified she cannot sleep without a cover and there was a cover on her when she woke up.

¶ 7    On cross-examination, the victim admitted the two beds in the bedroom were the same size, but she slept alone while the other two girls, who were larger, slept together. The victim explained she is "a wild sleeper" who tosses and turns frequently and moves her arms and legs a lot. Defense counsel also cross-examined the victim about her written statement made a few hours after the incident, about 9:25 a.m., at the police station. The victim admitted the statement did not say defendant rubbed her vagina in a circular motion; however, she explained she was positive she told the police officer that defendant rubbed her in a circular motion. When confronted about never actually having seen defendant with his hand on her body, the victim replied, "When I turned around, I saw [defendant] easing his hand from under the cover. Trying to ease his way out of the room." While the victim admitted she never actually saw his hand on her, she "felt it. And I know what I felt."

¶ 8    Ti'Ann testified she woke up when she heard the victim scream loudly. Ti'Ann then saw defendant at the end of the bed she was sleeping in with Si'Era. Defendant was not wearing a shirt. Defendant explained he scared the victim when he came in to get a

3

pillow. Ti'Ann testified the victim was scared, and the victim told her defendant had touched her.

¶ 9 Daniel Rice, a Carbondale police officer, responded to the scene at approximately 8:30 a.m. He testified the victim "was very upset and she was crying." Defendant admitted he went into the room where the victim was sleeping. Defendant told Officer Rice he did so in order to put a cover on the victim. Defendant explained it was cold and the victim was not covered, and he thought she should be covered. Defendant also told Officer Rice he placed a pillow on the victim's bed that was on the floor and said it was possible his hand might have touched her legs.

¶ 10 On cross-examination, defense counsel asked Rice about what the victim told him, such as whether the victim told Rice she was asleep when defendant touched her. On redirect, the prosecutor asked Rice about specifics as to what the victim told him when she was making her statement. Defense counsel objected on the basis that he did not specifically ask him what the victim told him, but asked where the interview occurred and who was present. The trial court overruled the objection, and the prosecutor asked, "Did [the victim] also tell you that she felt the hand rubbing her vagina and thigh in a small circular motion?" Rice responded, "Yes."

¶ 11 Tanya Covington, Si'Era and La'Shaunta's mother, testified for the defense. She is engaged to defendant. She confirmed that a group of girls spent the night at her house. She said that all that separates her bedroom from Si'Era's is a wall. She recalled defendant left her bedroom around 6:55 a.m. to use the bathroom. She heard the water

4

running in the bathroom and heard a noise. She assumed the girls were awake. Defendant then came back in the bedroom and touched Tanya's feet and said, "I think I scared her." Si'Era followed defendant into Tanya's bedroom and said, "Mommy, come here." Tanya then went to talk to the victim, who was crying.

¶ 12    The victim said she could not tell her what happened, so Si'Era and Ti'Ann told her what the victim told them. Tanya then headed back to her bedroom to talk to defendant. However, Tanya returned to the victim's room and said, "Now, *** before I go in this room and do something to this man that's going to send me [*sic*] to prison, what happened to you?" The victim then explained what happened, only telling her that defendant touched her thigh.

¶ 13    According to Tanya, defendant then went downstairs to cook breakfast. Tanya told the victim to call her family. Soon after, the victim's sister arrived. On cross-examination, Tanya admitted the victim was crying hysterically when she first asked her what happened, and when the victim's sister arrived, the victim cried again.

¶ 14    Kimberly Lockinour, a Carbondale police officer, testified she provided the victim with a voluntary statement form. Lockinour could not recall how long it took the victim to write her statement, but she did tell the victim that if she needed additional space, it would be provided, and she did not place any time limitation on the victim to complete the statement. Lockinour identified the statement written by the victim, and it was introduced into evidence as Defendant's Exhibit 1.

¶ 15   Defendant testified about his work history and his engagement to Tanya Covington.  He said Tanya sent him to her house the evening before the alleged incident in order to keep an eye on the teenagers who were at her house after the party.  According to defendant, he and Tanya went to bed about 3 a.m. and had sex about 5 a.m.  He then went to the bathroom down the hall to wash up.  He passed by Si'Era's room and saw the victim in a fetal position.  He said it looked like she was cold, so he picked a cover and pillow off the floor and tossed the cover over the victim and laid the pillow on the bed. He said this took "[a] few minutes."  Defense counsel said it sounded like it probably only took "seconds," and defendant agreed it was probably only seconds.  The prosecutor objected, and the trial court sustained the objection.

¶ 16   Defendant further testified as he was leaving Si'Era's bedroom, the victim screamed.  He apologized to the victim for startling her, but the victim kept crying so he went to get Tanya.  Defendant told Tanya he may have accidentally touched the victim's leg when he threw the cover over her, but said it was not any type of sexual touching. Defendant admitted that he has felony convictions.  He said if he did anything wrong to the victim he would have admitted it.

¶ 17   The parties presented closing arguments after which the jury returned a guilty verdict.  Defendant filed a *pro se* motion for a new trial and appointment of new counsel, which the trial court denied.  A sentencing hearing was conducted.  Defense counsel called four witnesses to testify in mitigation.  In aggravation, the prosecutor pointed out that defendant has seven prior felony convictions and was on conditional discharge when he was arrested in the instant case.  The trial court imposed an extended term sentence of

6

10 years on the basis of defendant's extensive criminal history. Defendant filed a timely notice of appeal.

¶ 18                                    ANALYSIS

¶ 19    The first issue we are asked to consider is whether the evidence was so incredible and improbable that it cannot serve as proof of defendant's guilt beyond a reasonable doubt. Defendant argues the jury's verdict was wrong because the State failed to prove defendant touched the victim inappropriately. In support of his argument, defendant raises three assertions: (1) the evidence showed the victim was asleep when she was allegedly touched, never saw defendant touch her, and could not even be sure when she was touched; (2) the victim's description of the incident defies common sense and physical possibility; and (3) the victim's improbable testimony was completely rebutted by defendant's reasonable and plausible testimony. We disagree.

¶ 20    When presented with a challenge to the sufficiency of the evidence, a reviewing court's function is not to retry a defendant. *People v. Givens*, 237 Ill. 2d 311, 334, 934 N.E.2d 470, 484 (2010). Rather we must consider " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Davison*, 233 Ill. 2d 30, 43, 906 N.E.2d 545, 553 (2009) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Under this standard, a reviewing court must draw all reasonable inferences from the record in favor of the State. *Davison*, 233 Ill. 2d at 43, 906 N.E.2d at 553.

¶ 21 Here, defendant admitted he entered the bedroom in which the victim was sleeping. He said he might have inadvertently touched the victim, but denied touching the victim in a sexual manner. While defendant denied sexually touching the victim, the victim succinctly testified that she woke up to defendant rubbing her private area in a circular motion. Even though the victim was facing the wall when this occurred, she testified that when she turned around she saw defendant easing his hand out from underneath the cover. The victim was adamant that defendant inappropriately touched her in a sexual manner.

¶ 22 Ti'Ann, who was sharing a bedroom with the victim when the alleged abuse occurred, testified she woke up when she heard the victim scream. Ti'Ann then saw defendant at the end of her bed, which was only a few feet away from the victim's bed. By all accounts, the victim was so upset by the incident that the police were called to the scene and took pictures and statements. Considering the evidence in the light most favorable to the State, we find the victim's account plausible. We agree with the State that while defendant's sexual abuse of the victim was indeed daring in light of the fact there were others in the bedroom and his fiancé was in the next room, that neither defies logic nor makes the victim's version of events improbable.

¶ 23 In support of our determination, we point out that the victim was adamant defendant touched her in a sexual manner, and the victim's version of events remained consistent from her initial reporting of the incident to trial. On the other hand, defendant's story changed. Initially, defendant said he went into the bedroom where the victim was sleeping to get a pillow. Ti'Ann specifically testified this is what defendant

8

told her when she woke up and saw him at the foot of her bed. However, defendant told Tanya he went into the bedroom to cover up the victim because she looked cold. At trial, defendant testified he put a blanket on the victim and put a pillow back on the bed. Interestingly, defendant also testified that he just had sex with Tanya prior to entering the victim's bedroom, whereas Tanya never mentioned a sexual encounter with defendant on the morning in question. Defendant also admitted he had prior felony convictions.

¶ 24 It is well settled that the credibility of the witnesses is determined by the trier of fact. *People v. Carlson*, 278 Ill. App. 3d 515, 521, 663 N.E.2d 32, 36 (1996). Here, the jury chose to believe the victim rather than defendant. After reviewing the evidence in the light most favorable to the State, we cannot say the jury's guilty verdict is so palpably contrary to the evidence or so unreasonable, improbable, or unsatisfactory to leave a reasonable doubt as to defendant's guilt.

¶ 25 The other issue raised by defendant on appeal is whether defense counsel was ineffective. Defendant argues his trial counsel was ineffective when he opened the door to an otherwise inadmissible prior consistent statement from the victim. Defendant specifically asserts his counsel opened the door by asking both the victim and Officer Rice questions that suggested recent fabrication, which prompted the prosecutor to elicit testimony from Officer Rice that the victim did tell him that defendant touched her vagina in a circular motion. The State responds the admission of this evidence was inconsequential and did not prejudice defendant.

¶ 26    In order to succeed on a claim of ineffective assistance of counsel, a defendant must satisfy the two-pronged *Strickland* test adopted by our supreme court: (1) defendant must allege facts which demonstrate counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's error, the result of the trial would have been different.  *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984); *People v. Albanese*, 104 Ill. 2d 504, 526, 473 N.E.2d 1246, 1255 (1984).

¶ 27    Under the *Strickland* test, a reasonable probability is a probability sufficient to undermine confidence in the outcome, namely, that counsel's deficient performance caused the result of the trial to be unreliable or fundamentally unfair.  *People v. Enis*, 194 Ill. 2d 361, 376, 743 N.E.2d 1, 11 (2000).   There is a strong presumption counsel's performance falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689.  Failure to satisfy either the deficiency prong or the prejudice prong of the *Strickland* test precludes a finding of ineffective assistance of counsel.  *Enis*, 194 Ill. 2d at 377, 743 N.E.2d at 11.   We may dispose of an ineffective assistance of counsel claim without addressing counsel's performance.  *Strickland*, 466 U.S. at 697; *Albanese*, 104 Ill. 2d at 527, 473 N.E.2d at 1256.

¶ 28    Even assuming, *arguendo*, that defense counsel was ineffective by opening the door to an otherwise inadmissible prior consistent statement from the victim, we agree with the State that defendant cannot show undue prejudice.  In cases where a defendant is convicted of aggravated criminal sexual abuse and denies the charges, the conviction will be upheld where the complainant's testimony is clear and convincing or where it is

10

substantially corroborated by other evidence. *People v. Daniels*, 164 Ill. App. 3d 1055, 1073, 518 N.E.2d 669, 682 (1987). Corroborating evidence includes eyewitness accounts, confession or admission by the defendant, prompt reporting of the incident by the victim, or medical testimony supporting the allegations. *People v. Thompson*, 198 Ill. App. 3d 417, 419, 555 N.E.2d 1122, 1124 (1990).

¶ 29    In the instant case, Officer Rice's confirmation that the victim told him defendant rubbed her vagina in a circular motion was cumulative of the victim's trial testimony. The victim specifically testified defendant rubbed her vagina in a circular motion. The victim was adamant that defendant touched her in a sexual manner. Her testimony was clear and convincing. Additionally, there was corroborating evidence to support the victim's allegations.

¶ 30    First, the victim promptly reported the incident. Second, the victim's scream after the incident, as testified to by not only Ti'Ann, but also defendant, was proof that the victim was more than startled by defendant's actions; she was scared. Third, Tanya's testimony showed the victim was hysterical after the incident, so much so that Tanya told her to call her family, and the police were dispatched to the scene. Under these circumstances, we cannot say defendant was unduly prejudiced by Officer Rice's confirmation that the witness told him after the incident that defendant rubbed her vagina in a circular motion.

¶ 31    We are well aware that charges entailing sexual abuse can be "easily made, hard to be proved, and harder to be defended by the party accused." *People v. Nunes*, 30 Ill. 2d

11

143, 146, 195 N.E.2d 706, 707 (1964); see also *Daniels*, 164 Ill. App. 3d at 1073, 518 N.E.2d at 681. Here, however, the victim was a strong witness who had no reason to fabricate a story about sexual abuse by defendant. This incident no doubt jeopardized the victim's friendship with Si'Era and La'Shaunta. Ti'Ann, Tanya, and defendant all confirmed how upset the victim was after the incident. Therefore, even if it was improper for defense counsel to attempt to impeach the victim's credibility through Officer Rice, defendant has failed to show prejudicial error requiring reversal.

¶ 32 For the foregoing reasons, we affirm the judgment of the circuit court of Jackson County.

¶ 33 Affirmed.

2016 IL App (5th) 130294

NO. 5-13-0294

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

THE PEOPLE OF THE STATE OF ILLINOIS,          )     Appeal from the
                                               )     Circuit Court of
    Plaintiff-Appellee,                        )     Jackson County.
                                               )
v.                                             )     No. 12-CF-253
                                               )
GALON E. MACK,                                 )     Honorable
                                               )     William G. Schwartz,
    Defendant-Appellant.                       )     Judge, presiding.
_____

**Opinion Filed:**          **May 2, 2016**
_____

**Justices:**          Honorable Richard P. Goldenhersh, J.

                   Honorable Melissa A. Chapman, J., and
                   Honorable Judy L. Cates, J.,
                   Concur
_____

**Attorneys**          Michael J. Pelletier, State Appellate Defender, Patricia Mysza, Deputy
**for**                Defender, Autumn Renee Fincher, Assistant Appellate Defender, Office
**Appellant**          of the State Appellate Defender, First Judicial District, 203 N. LaSalle,
                   24th Floor, Chicago, IL 60601
_____

**Attorneys**          Hon. Michael Carr, State's Attorney, Jackson County Courthouse,
**for**                Murphysboro, IL 62966; Patrick Delfino, Director, David J. Robinson,
**Appellee**           Acting Deputy Director, Whitney E. Atkins, Staff Attorney, Office of the
                   State's Attorneys Appellate Prosecutor, Fifth District Office, 730 E.
                   Illinois Highway 15, Suite 2, P.O. Box 2249, Mt. Vernon, IL 62864
_____