2018 IL App (1st) 150626

FIRST DIVISION
June 25, 2018

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 10 CR 16598 |
| | ) | |
| JAMARI McARTHUR, | ) | |
| | ) | Honorable |
| | ) | Michele McDowell Pitman |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE GRIFFIN delivered the judgment of the court, with opinion.
Presiding Justice Pierce and Justice Mikva concurred in the judgment and opinion.

OPINION

¶ 1    Seventeen-year-old defendant Jamari McArthur was arrested for allegedly engaging in sexual conduct with M.W., an 11-year-old boy. Defendant confessed to the police in writing after having spent 50 hours in custody without a probable cause determination. Defendant filed a motion to suppress his confession arguing that the duration of his detention without a probable cause determination rendered his confession involuntary. The trial court ruled that defendant's confession was voluntary despite the delay. A jury found defendant guilty of the aggravated criminal sexual abuse of M.W. and the trial court sentenced him to four-years' imprisonment. As a result of his conviction, defendant was ordered to register as a sex offender under the Sex Offender Registration Act (SORA) (730 ILCS 150/1 *et seq.* (West 2014)) for the remainder of his natural life.

¶ 2    On appeal, defendant challenges the trial court's ruling that his confession was voluntary and the sufficiency of the evidence presented at trial. Defendant further challenges the constitutionality of SORA and the SORA provision that precludes minors charged under the criminal laws as adults from petitioning to terminate their sex offender registration (730 ILCS 150/3-5(i) (West 2014) (Subsection (i) of Juvenile SORA)). We reject defendant's arguments that SORA and Subsection (i) of Juvenile SORA deprive him of the equal protection of the law and punish him. We affirm the jury's verdict and the trial court's ruling that defendant's confession was voluntary.

¶ 3                                      BACKGROUND

¶ 4    On Saturday, August 28, 2010 at 2:57 p.m., defendant was arrested and taken to the Calumet City Police Department. Later that day at 7:53 p.m., Detective Casey Erickson placed defendant in an interview room, read defendant his *Miranda* rights and presented him with a preprinted waiver form. Defendant said he understood his *Miranda* rights, initialed and signed the waiver form, and confessed to placing his mouth around the penis of M.W., an 11-year-old boy.

¶ 5    Detective Erickson questioned defendant again at 9:20 p.m. that night and defendant offered additional details about the incident. The next day, August 29, 2010 at 1:02 p.m., defendant consented to a mouth swab, placed a call to his grandmother and was not questioned for the rest of the day. On Monday, August 30, 2010, Detective Erickson and Cook County assistant state's attorney Elizabeth Dibler (ASA Dibler) attended four victim sensitive interviews (VSIs) of M.W. and other potential child witnesses. The last VSI concluded at 2:14 p.m. and ASA Dibler met with defendant in an interview room at the police station at 3:45 p.m.

¶ 6    ASA Dibler read defendant his *Miranda* rights and questioned him in the presence of

Detective Erickson. Defendant indicated that he understood his *Miranda* rights and over the course of a half hour, provided a detailed confession and chronological account of the events leading up to, and following, the incident. At around 5:02 p.m., ASA Dibler asked defendant to make a written confession and defendant agreed. ASA Dibler proceeded to summarize defendant's statements in writing on a preprinted form. When completed, defendant read the statement aloud without any difficulty. Defendant asked ASA Dibler to add three sentences to his statement and then signed the statement on each of its four pages. Defendant also signed a picture of himself, taken by ASA Dibler, showing him signing the statement.

¶ 7    The next morning, Tuesday, August 31, 2010, defendant was brought before a judge for a probable cause determination. More than 73 hours had passed since the time of his arrest. The judge found probable cause for defendant's arrest and he was subsequently charged with two counts of predatory criminal sexual assault (720 ILCS 5/11-1.40(a)(1) (West 2016)), four counts of criminal sexual assault (720 ILCS 5/12-13(a)(2) (West 2016)) and one count of aggravated criminal sexual abuse (720 ILCS 5/12-16(C)(1)(i) (West 2016)).

¶ 8    Defendant filed a motion to suppress his confession, arguing that his time spent in custody without a judicial determination of probable cause was unreasonable and rendered his confession involuntary. The trial court held an evidentiary hearing on defendant's motion and the State called Detective Erickson and ASA Dibler to testify. Detective Erickson testified that he did not bring defendant to court for a probable cause determination until the morning of August 31, 2010 because "we hadn't officially interviewed the victim" and "there was still an ongoing investigation." Detective Erickson testified that he could not schedule VSIs of child witnesses until the afternoon of August 30, 2010, but that defendant was brought before a judge the morning after the interviews were conducted. Detective Erickson could offer "no reason" as to

why he did not release defendant before the VSIs were conducted and re-arrest defendant if the victim and child witnesses confirmed the content of defendant's confession.

¶ 9    ASA Dibler testified that after attending VSIs on August 30, 2010, she and Detective Erickson placed defendant in an interview room around 3:45 p.m. ASA Dibler read defendant his *Miranda* rights and defendant provided a detailed statement of his sexual contact with M.W.: defendant was at M.W.'s house on Friday and stayed the night; defendant went to bed around 12:00 p.m., awoke at 1:00 a.m. the next morning and placed his head on M.W.'s stomach; defendant noticed M.W.'s penis protruding from his shorts and put M.W.'s penis inside his mouth for 10 seconds; M.W. woke up, went to the bathroom, returned to the bedroom and slept on the other side of the room. ASA Dibler testified that, outside the presence of Detective Erickson, defendant denied being verbally or physically threatened, or abused, by the police. Returning to the interview room around 5:02 p.m., ASA Dibler testified that she read defendant his *Miranda* rights and with defendant in agreement, summarized his statements in writing on a preprinted form. Defendant read the completed statement aloud. Defendant asked ASA Dibler to add three sentences after the statement's third paragraph and everyone present signed the statement on all of its pages.

¶ 10    The trial court denied defendant's motion to suppress his confession, stating that although the police delayed a probable cause determination, the totality of the circumstances indicated that defendant's confession was given voluntarily. The State proceeded on the charges of predatory criminal sexual assault and aggravated criminal sexual abuse and a jury trial commenced.

¶ 11    M.W. testified that he woke up between 10:30 p.m. and 11:00 p.m. on August 27, 2010, and saw that his sister had a sheet over her face. Defendant was laying on M.W. like a pillow, touched his shorts and started licking his underwear for several minutes. M.W. testified that

defendant then started "sucking [his] penis." Defendant tried to get M.W. to grab his penis, but M.W. pushed his hand away. M.W. then felt something wet on his leg. Defendant got up and put a sheet over M.W.'s face before going to the bathroom. Upon his return, defendant cleaned up the "wet feeling" on M.W.'s leg and continued to suck his penis. Defendant stopped after a few minutes and M.W. pretended to be asleep. M.W. testified that he told his mother what happened the next morning and defendant was arrested the same day. After giving statements to arresting officers, M.W. testified that his mother took him to St. Margaret's Hospital, where he was examined by Dr. Brett Marcotte. M.W. told Dr. Marcotte that he had not changed his clothes or taken a shower that day. M.W. testified that three days later, he attended a VSI with Dr. Myra West.

¶ 12    Defendant took the stand in his own defense and testified to a different version of events. Defendant testified that he spent the night M.W.'s house and fell asleep next to him in a bedroom. At around midnight, defendant testified that he woke up, went to use the bathroom, washed his hands and then went back to sleep. A half hour later, M.W. woke up, hit the defendant, left the room and started walking down the hallway toward the bathroom. When M.W. returned, defendant testified that M.W. went to sleep next to his sister, E.A.

¶ 13    Defendant's testimony as to what he said and did while in police custody conflicted with the testimony of Detective Erickson and ASA Dibler. Defendant testified that in his interviews with Detective Erickson, he waived his *Miranda* rights and denied placing his mouth on M.W.'s penis. Defendant further denied adding the sentences after the third paragraph of his written confession. On cross-examination, defendant admitted to making the statements contained in his written confession and to telling ASA Dibler that he saw M.W.'s penis sticking out of his shorts, that he placed M.W.'s penis in his mouth for ten seconds and stopped sucking M.W.'s penis

when M.W. woke up. However, defendant maintained that what he told ASA Dibler was not true.

¶ 14    Defendant called Dr. Brett Marcotte to the stand and he testified that he used a standard sexual assault kit to examine M.W. Dr. Marcotte testified that he found no semen on M.W.'s groin and thigh area after performing a black light test of the region and that he skipped step 6 of the sexual assault kit, which required him to perform a penile swab of M.W. Defendant also called police officer Mike Serrano to the stand, who testified that he was assigned to take photographs and collect evidence from M.W.'s home. Serrano collected tissue from each of two trash cans found in the bathroom next to M.W.'s bedroom and a shoe box containing bathroom tissue in a dumpster outside of the apartment. Serrano testified that he sent the evidence he collected to the Illinois State Police Crime Lab for testing.

¶ 15    Katherine Sullivan, a forensic biologist working for the Illinois State Police Crime Lab, testified that she received and tested the physical evidence collected in M.W.'s case. When testing M.W.'s boxer shorts for the presence of saliva, Sullivan testified that she expected saliva to have been transferred to M.W.'s boxer shorts after three minutes of licking, but that she found none. Sullivan testified that defendant's mouth swab tested negative for the presence of semen and that a test of the tissue from one of the bathroom trash cans revealed 16 glowing spots under a black light, but that each stain tested negative for semen or saliva. Sullivan noted the absence of a penile swab from the sexual assault kit and testified that penile swabs are tested for the presence of saliva.

¶ 16    At the close of the parties' arguments, the jury deliberated and found defendant guilty of aggravated criminal sexual abuse. Defendant filed a motion for a new trial, which was denied. The trial court sentenced defendant to four-years' incarceration in the Illinois Department of

Corrections and as a result of his conviction, required defendant to register as a sex offender under SORA for the remainder of his life. The trial court denied defendant's motion to reconsider his sentence.

¶ 17 Defendant appeals his conviction and seeks a new trial or the outright reversal of his conviction. Alternatively, defendant requests that we vacate the trial court's order mandating him to lifetime SORA registration and remand of his case to the trial court with an instruction that he be ordered to register under the provisions of SORA applicable to juveniles.

¶ 18                              JURISDICTION

¶ 19 On October 21, 2014, a jury found defendant guilty of aggravated criminal sexual abuse. The trial court sentenced defendant on January 20, 2015. Defendant filed a timely motion to reconsider his sentence, which was denied on February 17, 2015. A notice of appeal was filed on February 17, 2015. Accordingly, we have jurisdiction to hear defendant's appeal. Ill. Const. 1970, art. VI, § 6; Ill. S. Ct. R. 603 (eff. Feb. 6, 2013); Ill. S. Ct. R. 606 (eff. July 1, 2017).

¶ 20                                ANALYSIS

¶ 21 The issues on appeal are whether: (1) the trial court erred in ruling that defendant's confession was voluntary; (2) the forensic evidence presented at trial contradicted the State's case such that no rational trier of fact could have found defendant guilty of aggravated criminal sexual abuse beyond a reasonable doubt; (3) Subsection (i) of Juvenile SORA on its face, and as applied to defendant, violates the Equal Protection clause of the Illinois (Ill. Const.1970, art. I, sec. 2) and United States Constitutions (U.S. Const., amend. XIV, sec. 1) by excluding minors prosecuted under the criminal laws as adults from petitioning to terminate their SORA registration; (4) Subsection (i) of Juvenile SORA and SORA subjected defendant to disproportionate, and cruel and unusual punishment, in violation of the Eighth Amendment to the

United States Constitution (U.S. Const., amend. VIII) and the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, Art. I, § 11).

¶ 22    We review the trial court's factual findings at the evidentiary hearing on defendant's motion to suppress his confession to determine whether they were against the manifest weight of the evidence. *People v. Richardson*, 234 Ill. 2d 233, 251 (2009). We review the trial court's ultimate ruling, that defendant's confession was voluntary, *de novo*. *Id*. We may consider both the evidence presented at defendant's suppression hearing as well as the evidence adduced at trial to determine whether the State proved the voluntariness of defendant's confession by a preponderance of the evidence. *Id*.

¶ 23    Police are required to provide a defendant with a "fair and reliable determination of probable cause" before or promptly after arrest. *Gerstein v. Pugh*, 420 U.S. 103, 125 (1975). A prompt determination of probable cause is one made within 48 hours of arrest. *City of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991). Here, police clearly exceeded the law's 48-hour limit by providing defendant with a probable cause determination 73 hours after his arrest. However, even if police do not provide a defendant with a prompt determination of probable cause, a confession will not be suppressed unless it was given involuntarily. See *People v. Willis*, 215 Ill 2d 517. 535 (2005) (holding that a trial court facing a *Gerstein*/*McLaughlin* violation asks the question whether the confession was voluntary). We therefore turn to consider whether, in light of the delay of defendant's probable cause determination, his confession was voluntary.

¶ 24    To determine whether defendant's confession was voluntary, we consider the totality of the circumstances and the following factors: (1) age, (2) intelligence, (3) education, (4) experience, (5) physical condition at the time of the detention and interrogation, (6) the duration of the interrogation, (6) the presence of *Miranda* warnings, (7) the presence of any physical or

mental abuse and (8) the legality and duration of the detention. *Id*. at 536. Defendant's statement was voluntary unless his will was overcome by the police at the time he confessed. *People v. Gilliam*, 172 Ill. 2d 484, 500 (1996).

¶ 25    The trial court considered the foregoing factors and ruled that, although police delayed defendant's probable cause determination, the totality of the circumstances did not warrant the suppression of his confession as involuntary. The trial court supported its decision with the following factual findings adduced from the evidentiary hearing on defendant's motion to suppress his confession:

"Under a totality of the circumstances analysis *** defendant was 17 years of age and a high school student living with family members. The defendant was currently looking for a job. Was not able to obtain one at the time but looking for employment. I have not heard that the defendant was below intelligence, a special needs student. Did not understand what was going on when the Assistant State's Attorney and the Detective spoke with the defendant and clearly gave defendant his *Miranda* warnings.

Both witnesses indicated that the defendant was cooperative. He understood his *Miranda* Warnings; and, he waived *Miranda* *** In this case, it appears as if the witnesses are children. The defendant is being spoken to on the 28th and within five hours or so he gives an incriminating statement. Now at this point the Detective needs to continue to speak with the children who were involved in this. Hearing the circumstances of this incident. There are young children to be interviewed"

***

"The Detective indicated that the first time he was able to get a victim

sensitive interview set up with these children was *** at 1:00 p.m. Monday, the 30th. The defendant was arrested on August 28th at just before 3:00 p.m. So, at that time the victim sensitive interviews were being conducted you're still within the forty-eight hour timeframe *** When the police, they are continuing their investigation I don't find that it was any malicious delay in trying to keep the defendant as opposed to in [*Willis*] where the defendant was kept. He had not given any incriminating statement."

***

"It is a delay. Yes, it is. Does it render the statement looking at the totality of the circumstances and the need and I believe [*Willis*] speaks even about the need to allow the police some latitude to conduct their investigations. This was an investigation. This was not an attempt to get the defendant to confession and keep him in custody past forty-eight hours. *** The delay alone does not render the statement involuntary based on the totality of the circumstance under which [defendant] gave his statement."

¶ 26    We hold that the trial court's factual findings were not against the manifest weight of the evidence and its ultimate ruling was not in error. The delay of defendant's probable cause determination beyond 48 hours was not the result of a willful disregard of *McLaughlin*, indifference to defendant's presence in custody or the product of police misconduct. See *Willis*, 215 Ill. at 538. Detective Erickson's explanation for the delay was not "specious," as defendant contends, but rather demonstrative of his intent to corroborate defendant's account of the incident with statements obtained from M.W. and other child witnesses through VSIs. When the VSIs were completed on August 30, 2010, defendant was interviewed, confessed in writing and a judge found probable cause for his arrest the next morning. Any delay by police was attributed to

the need to speak with the child witnesses before charging defendant with a felony offense. We find that the police did not engage in "delay for delay's sake." *McLaughlin*, 500 U.S. at 59. Having considered the duration of defendant's detention, we turn to address the other factors necessary to our determination of whether defendant's confession was voluntary. See *People v. Westmoreland*, 372 Ill. App. 3d 868, 877 (2007) (no single factor is determinative).

¶ 27     The record supports the trial court's findings and determination that defendant was provided his *Miranda* rights before questioning and that police questioning was not unreasonable in duration. Defendant was arrested on August 28, 2010 at 2:57 p.m., read his *Miranda* rights and, following a 20-minute interview, confessed by 7:53 p.m. that night. About an hour later, defendant was read his *Miranda* rights again and provided more information to the police about the incident. On August 30, 2010 at 3:45 p.m., defendant was read his *Miranda* rights by ASA Dibler and, over the course of a 30-35 minute interview, confessed to his placing his mouth on M.W.'s penis. ASA Dibler then returned, re-read defendant his *Miranda* rights and, over the course of 15 to 20 minutes, reduced defendant's confession to writing with his permission. Defendant read the statement aloud, clarified his statement with additional sentences and signed each page of the preprinted form, which contained a list of *Miranda* rights in its preamble.

¶ 28     The trial court's factual findings as to defendant's personal characteristics and the lack of police mistreatment support its ruling. When defendant was arrested, he was over the age of 17 and in the tenth grade taking geometry, chemistry, physical education, journalism and speech classes. The trial court noted the absence of any facts demonstrating that defendant was "below intelligence" or "a special needs student." There was no indication of police mistreatment or mental abuse during defendant's questioning. Detective Erickson denied making any overt threats or promises to defendant in exchange for his statements and, outside the presence of

Detective Erickson, defendant denied being verbally or physically threatened, or abused, by the police.

¶ 29    As defendant points out, he had no prior involvement with the police and no criminal background, but his inexperience alone does not support the suppression of his confession. Defendant attempts to analogize his case, and himself, to that of the defendant in *Westmoreland*, 372 Ill. App. 3d 868 (2007). *Westmoreland* examined the confession of an "immature" and "terrified" 17-year-old defendant after police refused to contact his mother and detained him beyond the 48 hour limit imposed by *McLaughlin*. 372 Ill. App. at 869. The *Westmoreland* court held that the defendant's physical characteristics, the interrogating police officer's statement that "I don't give a shit if you go to jail or not" and the fact that police refused defendant's requests to contact his mother during questioning warranted the suppression of his confession. 372 Ill. App. 3d at 890. The police made no such statement here and defendant did not share the physical characteristics of the defendant in *Westmoreland*. *Id*. at 874.

¶ 30    Defendant argues that Detective Erickson violated his rights under the provision of the Juvenile Court Act (JCA) that requires police officers, who arrest a minor without a warrant, to "immediately" make a reasonable attempt to notify a parent or legal guardian and to take the minor to the nearest juvenile officer "without unnecessary delay." 705 ILCS 405/5-405(2) (West 2016). However, this provision applies to minors who are subject to the jurisdiction of the JCA. 705 ILCS 405/5-130(7) (West 2016) (procedures for the investigation, arrest and prosecution of juvenile offenders shall not apply to minors who are excluded from the jurisdiction of the juvenile court). Defendant was not subject to the exclusive jurisdiction of the JCA when he was questioned by police. See 705 ILCS 405/5-120 (West 2014) (prior to its amendment under Public Act 98–61, section 5 (eff. Jan. 1, 2014), the exclusive jurisdiction statute of the JCA applied to

minors under the age of 17). Defendant therefore cannot avail himself of the protections afforded by this provision.

¶ 31     Alternatively, defendant argues that we should consider the "concerned adult" factor to find that his confession was involuntary. The concerned adult factor requires a determination of whether: (1) defendant had an opportunity to consult with an interested adult before or after interrogation; and (2) whether a police prevented defendant from contacting an interested adult or vice versa. *Richardson*, 234 Ill. 2d 233, 254 (2009). In support of his argument, defendant cites *Westmoreland*, arguing that the absence of a concerned adult when defendant was questioned by police weighs in favor of the suppression of his confession. But unlike *Westmoreland*, there are no facts indicating that the police prevented defendant from contacting his parent or vice versa. To the contrary, defendant placed a phone call to his grandmother 15 hours after his arrest. We recognize that defendant was permitted to contact his grandmother after he made an oral confession, but do not find that this factor renders his written confession, which was given after he spoke with his grandmother, involuntary.

¶ 32     The totality of the circumstances do not warrant the suppression of defendant's confession. The police did not overbear defendant's will and the State was at liberty to publish the written confession to the jury at trial. See *In re Marvin M.*, 383 Ill. App. 3d 693, 705 (2008) (police are allowed to play on a respondent's ignorance, fear, and anxieties, but may not engage in conduct that overbears a defendant's will or renders him incapable of making a rational decision). Accordingly, the trial court's factual findings were not against the manifest weight of the evidence and its ultimate conclusion, that the State proved the voluntariness of the defendant's confession by a preponderance of the evidence, was not in error.

¶ 33     Defendant challenges the sufficiency of the evidence presented at trial, arguing that

forensic evidence contradicted the State's case such that no rational trier of fact could have found him guilty of criminal sexual abuse beyond a reasonable doubt. Defendant's challenge requires us to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *People v. Hardman*, 2017 IL 121453, ¶ 37. We will not reverse defendant's criminal conviction unless the evidence presented to the jury was so "unreasonable, improbable or so unsatisfactory as to justify a reasonable doubt of the defendant's guilt." *People v. Campbell*, 146 Ill. 2d 363, 375 (1992). We review the evidence in a light most favorable to the State and draw all reasonable inferences from the evidence in the State's favor. *Id*.

¶ 34    We hold that the jury could have found defendant guilty of aggravated sexual abuse beyond a reasonable doubt based on the evidence presented at trial. The testimony of M.W. was sufficient to convict defendant of his sex offense and we will not retry the defendant or substitute the jury's credibility determinations with that of our own. *People v. Cunningham*, 212 Ill. 2d 274, 279 (2004).

¶ 35    In order to convict defendant of the aggravated criminal sexual abuse of M.W., the jury was required to find that the State proved the following elements of the offense beyond a reasonable doubt:  (1) defendant was over 17 years of age; (2) M.W. was younger than 13 years of age; and (3) defendant knowingly committed an act of sexual conduct on M.W. See 720 ILCS 5/12-16(c)(1)(i) (West 2016); see also 720 ILCS 5/12-12(e) (West 2016) (defining sexual conduct as the knowing touching of the sex organ of the complaining witness by the accused).

¶ 36    The testimony of M.W. could alone have supported the jury's verdict. It is well settled that the testimony of a single witness, if positive and credible, is sufficient to convict even though it is contradicted by the defendant. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009).

M.W. testified that he was younger than 13 years of age, and defendant was over 17-years-old, when the following events took place: M.W. woke up between 10:30 p.m. and 11:00 p.m. on the night of August 27, 2010; defendant was laying on him like a pillow; touched his shorts; licked his underwear for several minutes; and started "sucking [his] penis." These facts are similar to *People v. Mack*, 2016 IL App (5th) 130294, where the court held that the victim's testimony, that she woke up to defendant rubbing her private area in a circular motion, supported the jury's finding of guilt in spite of the defendant's contrary testimony that he may have touched her thigh when he tried to put a cover of the victim. Here too, M.W.'s testimony could have supported the jury's verdict despite defendant's conflicting testimony at trial.

¶ 37   Defendant cites *In re Nasie M.*, 2015 IL App (1st) 151678 in support of his argument that forensic evidence raised sufficient reasonable doubt that no rational trier of fact could have found him guilty. But that case does not apply here.  *In re Nasie M.* involved a court's reversal of a juvenile's conviction for aggravated unlawful use of a weapon and unlawful possession of a firearm where the State presented no eyewitnesses at trial or any evidence that the defendant actually possessed a firearm when he was found shot in the foot. 2015 IL 151678, ¶ 3. Here, the victim testified credibly to defendant's sexual conduct. Moreover, defendant confessed in writing.

¶ 38   Defendant alleges three forensic evidentiary contradictions, each of which are unavailing: (1) the was no saliva detected on M.W.'s boxer shorts despite M.W.'s statement that he licked his boxer shorts for several minutes; (2) there was no semen on M.W.'s leg despite his testimony that he "felt something wet"; and (3) there was no semen on the bathroom tissues collected by officer Serano despite defendant's written statement that he ejaculated and cleaned himself them.

¶ 39   Forensic technician Sullivan testified that the amount of saliva transferred to M.W.'s

boxer shorts would have depended on which part of defendant's tongue he used when he licked the boxer shorts. M.W. testified that he wiped the semen off of his thigh which, according to forensic technician Sullivan, may have explained why Dr. Marcotte's examination did not reveal the presence of semen on his body. The fact that penile swab results were not presented to the jury does not raise sufficient doubt to overturn the verdict as the State was not required to present corroborating evidence to support the jury's finding of guilt. See *People v. Herron*, 2012 IL App (1st) 090663 (corroborating physical evidence not necessary when eyewitness testimony is credible).

¶ 40     Similarly, the fact that discarded bathroom tissues collected from M.W.'s home did not test positive for the presence of semen does not suffice to overturn the jury's verdict. As to defendant's argument that M.W.'s testimony was inconsistent with defendant's written confession and his testimony at trial, the jury resolved those inconsistencies against defendant. *People v. Cunningham*, 212 Ill. 2d 274, 283 (2004). The precise time the incident took place, as well as the questions as to whether defendant grabbed M.W.'s penis, whether M.W. walked to the bathroom, and the number of times defendant sucked on M.W.'s penis, are collateral matters that did not render M.W.'s testimony "incredible or improbable." *People v. Gray*, 2017 IL 120958, ¶ 47. Accordingly, the jury's verdict stands and the evidence presented at trial was not "so unreasonable, improbable, or unsatisfactory" as to warrant an overturning of the jury's verdict. *Id*. at ¶ 35.

¶ 41     Defendant challenges the facial and as-applied constitutionality of Subsection (i) of Juvenile SORA, which precludes minors prosecuted under the criminal laws as adults from petitioning a court to terminate their SORA registration. 730 ILCS 150/3-5(i) (West 2016). Defendant argues that Subsection (i) of Juvenile SORA deprives him of equal protection by

creating a "distinction that allows minors who are found guilty of committing the same offense, at the same age, to be subject to different SORA registration requirements." We review defendant's equal protection challenge *de novo*. *People v. Richardson*, 2015 IL 118255, ¶ 8.

¶ 42    The State argues that defendant forfeited review of his argument. Ordinarily, the failure to raise a constitutional challenge before the trial court results in a forfeiture of the argument on appeal. *Odle v. Department of State Police*, 2015 IL App (5th) 140274, ¶ 35. However, defendant raised an equal protection argument before the trial court in his posttrial motion for a new trial and, in any event, a challenge to the constitutionality of a statute may be raised at any time. *People v. Burnett*, 2015 IL App (1st) 133610, ¶ 80.

¶ 43    Under SORA, "a minor adjudicated delinquent for an offense which, if charged as an adult, would be a felony" may petition for the termination of registration "no less than 5 years" after registration was ordered. 730 ILCS 150/3-5(c) (West 2016). However, this subsection "does not apply to minors prosecuted under the criminal laws as adults." 730 ILCS 150/3-5(i) (West 2016). Therefore, *only* an individual who is subject to, or not excluded from, the jurisdiction of the JCA can petition to terminate SORA registration. See 705 ILCS 405/5-120 (West 2014); see also 705 ILCS 405/5-130(1)(a)(ii) (West 2016) (minor charged with aggravated criminal sexual assault shall be prosecuted under the criminal laws of Illinois).

¶ 44    We hold that defendant's facial and as-applied equal protection challenges to the constitutionality of Subsection (i) of Juvenile SORA fail outright because he was simply not subject to the jurisdiction of the JCA when he engaged in the sexual conduct that supported his conviction. Defendant falls into the category of 17-year-old offenders who were alleged to have committed a criminal offense before the amendment to the exclusive jurisdiction provision of the JCA went into effect. (Public Act 98–61, section 5 (eff. Jan. 1, 2014) (extending jurisdiction of

the JCA to minors under 18 years of age at time of their alleged offense); 705 ILCS 405/5-120 (West 2014). Prior to the statute's amendment only individuals under the age of 17 could be tried in juvenile court. *Id*. Therefore, defendant was simply unable to take advantage of that which an adjudication of delinquency would have provided: the opportunity to petition a court for termination from the SORA registry after five years. But the cause of defendant's complaint is timing, not illegality.

¶ 45    The line drawn between juveniles, adjudicated delinquent under the JCA, and adults, prosecuted under the criminal laws, is jurisdictional. As our Supreme Court recognized in *Richardson*, 2015 IL 118255, ¶ 10, amendments must have a beginning and the fact that the amendment to the exclusive jurisdiction of the JCA applies to some 17 year olds, and not others, does not render the statute unconstitutional. Accordingly, defendant's facial and as-applied equal protection challenges to Subsection (i) of Juvenile SORA fail.

¶ 46    Defendant's final contention is that Subsection (i) of Juvenile SORA, and his mandated lifetime SORA registration, impose a (1) cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution (U.S. Const., amend. VIII) and (2) disproportionate penalty in violation of the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, Art. I, § 11). We review defendant's constitutional challenge *de novo*. *People v. Jackson*, 2017 IL App (3d) 150154, ¶ 19.

¶ 47    The Eight Amendment states that "cruel and unusual punishment" shall not be inflicted and has been interpreted to include "a narrow proportionality principle." U.S. Const., amend VIII; *Harmelin v. Michigan*, 501 U.S. 957, 997 (1991). The proportionate penalties clause of the Illinois Constitution states that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship."

Ill. Const. 1970, Art. I, § 11. The clause prohibits criminal penalties that are wholly disproportionate to an offense and prevents offenses with the same elements from having different sentences. *People v. Pollard*, 2016 IL App (5th) 130514, ¶ 51. The Eight Amendment and proportionate penalties clause are coextensive. *Id.*

¶ 48    Defendant challenges Subsection (i) of Juvenile SORA as applied to him. Defendant admits that SORA is not punitive, but argues that "one specific provision, Section 150/3-5(i), operates in such a way as to have an exclusively punitive effect despite the overall civil-regulatory character of SORA." In support of his argument, defendant cites a litany of cases from foreign jurisdictions that are not precedential. *People v. Applewhite*, 2016 IL App (1st) 142330, ¶ 23 ("The decisions of foreign courts are not binding on Illinois courts and we are required to follow our Supreme Court precedent").

¶ 49    We hold that Subsection (i) of Juvenile SORA is a non-punitive jurisdictional statute that does not apply to defendant and therefore, his as-applied constitutional challenge must fail. Subsection (i) of Juvenile SORA merely precludes individuals not subject to, or excluded from, the jurisdiction of the JCA from petitioning a court to terminate their SORA registration. 730 ILCS 150/3-5(i) (West 2016). The statutory provision operates in a manner similar to the mandatory transfer statute, which has routinely survived constitutional challenges under the Eighth Amendment and the proportionate penalties clause of the Illinois Constitution. *People v. Pacheco*, 2013 IL App (4th) 110409, ¶ 55; see *People v. Salas*, 2011 IL App (1st) 091880, ¶ 66 (holding that the automatic transfer statute does not impose any punishment on the juvenile defendant, but rather it only provides a mechanism for determining where defendant's case is to be tried).

¶ 50    Again, defendant was over the age of 17 when he engaged in the sexual conduct that

supported his conviction for aggravated criminal sexual abuse. Because defendant was not subject to the jurisdiction of the JCA, the statute does not apply to him, let alone exact a cruel and unusual or disproportionate punishment upon him. Insofar as defendant's challenge is one to the amendment to the exclusive jurisdiction of the JCA, which subjects 17-year-olds to delinquency proceedings, we have already indicated that the legislative classification is constitutional. *Richardson*, 2015 IL 118255, ¶ 10. Accordingly, defendant's as-applied challenge to Subsection (i) of Juvenile SORA cannot survive as the statute is a non-punitive jurisdictional mechanism that does not apply to him.

¶ 51    In his final argument, defendant contends that his mandated lifetime SORA registration is punitive as applied to him. The State argues that defendant has forfeited review of this issue, lacks standing to raise the issue and has failed to develop the factual record necessary for his as-applied constitutional challenge to prevail. Alternatively, the State argues that SORA is non-punitive.

¶ 52    We initially note that that a challenge to the constitutionality of a statute may be raised at any time and defendant raised an Eighth Amendment challenge before the trial court in his posttrial motion. *People v. Burnett*, 2015 IL App (1st) 133610, ¶ 80. Defendant has therefore not forfeited review of this issue. We reject the State's argument that defendant has no standing to pursue his constitutional challenge because, as a result of his conviction, he is automatically subject to SORA for the remainder of his life and has thereby received punishment. See *People v. Avila-Briones*, 2015 IL App (1st) 132221, ¶¶ 31-43.

¶ 53    We agree with the State's argument that defendant has failed to sufficiently develop the record. See *People v. Thompson*, 2015 IL 118151, ¶ 37 (an as-applied constitutional challenge is dependent on the particular circumstances and facts of the individual defendant and must be

sufficiently developed for purposes of appellate review). But our holding does not require an analysis of SORA's punitive effects in light of defendant's individual characteristics.

¶ 54    Our Supreme Court has routinely held that "sex offender registration is not punishment." *People v. Cardona*, 2013 IL 114076, ¶ 24 (*citing People ex rel. Birkett v. Konetski*, 233 Ill. 2d 185, 207 (2009). Similarly, SORA registration, as applied to juvenile sex offenders, is not punitive. *In re J.W.*, 204 Ill. 2d 50, 75 (2003). Defendant himself has admitted that SORA is non-punitive statute with an "overall civil-regulatory character."

¶ 55    We hold that defendant's mandated lifetime registration under SORA is not punishment imposed as a result of his conviction for the aggravated criminal sexual abuse of M.W. The Eighth Amendment and proportionate penalties clause do not apply unless and until a statute imposes punishment or a penalty. *People v. Patterson*, 2014 IL 115102, ¶ 101. We are bound by clear Supreme Court precedent that SORA is a non-punitive regulatory scheme designed for public safety. *Cardona*, 2013 IL 114076, ¶ 24 (*citing People ex rel. Birkett v. Konetski*, 233 Ill. 2d 185, 207 (2009)). Accordingly, defendant's as-applied Eighth Amendment and proportionate penalties clause challenges to SORA must fail.

¶ 56                                    CONCLUSION

¶ 57    Accordingly, we affirm.

¶ 58    Affirmed.